IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of the Conservatorship of:

WILLIAM JOHN CHALMERS, *An Adult*,

No. 1 CA-CV 22-0429
FILED 9-21-2023

Appeal from the Superior Court in Maricopa County
No. PB2017-001373
The Honorable Thomas Marquoit, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Counsel for Plaintiff/Appellee*

Jones Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride
*Counsel for Defendants/Appellants*

---

**OPINION**

Presiding Judge Jennifer M. Perkins delivered the opinion of the Court, in which Judge Angela K. Paton joined. Judge D. Steven Williams dissented.

---

**P E R K I N S**, Judge:

**¶1**　　　In Arizona, a professional who intends to seek compensation from a ward's estate must give a "general explanation of the compensation arrangement and how the compensation will be computed" upon the first appearance in a probate proceeding. *See* A.R.S. § 14-5109(A) ("notice requirement"). We address here what happens when a professional fails to comply with the notice requirement.

**¶2**　　　The superior court ordered Appellants East Valley Fiduciary Services, Inc. ("EVFS"), Brian J. Theut, Ryan M. Scharber, and John M. McKindles (collectively, "the Professionals") to repay fees previously awarded because they failed to give the required notice. The ward, William Chalmers, argues that the statute is mandatory and noncompliance precludes any compensation. For the following reasons, we affirm in part and vacate and remand in part.

**FACTS AND PROCEDURAL BACKGROUND**

**¶3**　　　Chalmers filed for legal separation, later converted to dissolution, from his wife in September 2016. During the divorce proceedings, Chalmers' counsel successfully moved to appoint a guardian ad litem ("GAL") for Chalmers, citing concerns that Chalmers lacked capacity to understand the proceedings or act in his own best interests. The superior court appointed Theut as Chalmers' GAL in July 2017.

**¶4**　　　At Theut's request, the court appointed EVFS as temporary guardian and temporary conservator for Chalmers in August 2017. EVFS retained Scharber to represent it as temporary guardian and temporary conservator and McKindles to represent Chalmers in his divorce proceedings. Theut continued as Chalmers' GAL.

**¶5**　　　During the conservatorship, the Professionals filed Arizona Rule of Probate Procedure ("Rule") 33 applications for fees and costs. These applications detailed the Professionals' work on Chalmers' legal matters

and requested court approval to withdraw funds from Chalmers' estate in payment.

**¶6**　　　　Theut filed his first application in March 2018, requesting fees for the initial eight months of services. EVFS, Scharber, and McKindles filed their first applications a month later, requesting fees covering their initial six (McKindles), seven (Scharber), and eight (EVFS) months of service. The Professionals' total requested compensation in these initial applications amounted to over $312,000. The court approved the requests in orders between May and July 2018 ("initial fee orders").

**¶7**　　　　The Professionals filed subsequent fee applications covering their remaining months of service. Generally, the subsequent applications covered March through October 2018.

**¶8**　　　　Another judicial officer took over Chalmers' case in 2019. The narrow issue before us arose when the superior court noted in a July 2020 minute entry that EVFS, Theut, Scharber, and McKindles never filed Section 14-5109(A) notices upon first appearance. The court asked the parties to address the issue at a September 2020 hearing.

**¶9**　　　　EVFS conceded that it did not submit a Section 14-5109(A) notice at the outset but argued the parties and the court "constantly" addressed the Professionals' fees throughout the pleadings and during oral argument; EVFS cited its Rule 33 applications as examples of such pleadings. No other party acknowledged the failure to submit the required notice.

**¶10**　　　　Chalmers challenged the Professionals' fee requests, including those approved in the initial fee orders. The superior court rejected the challenge to the initial fee orders, concluding that Chalmers effectively requested an impermissible horizontal appeal. The court denied the remaining Rule 33 applications for failure to file the required notice.

**¶11**　　　　The court also ruled that the initial fee orders were final when issued and Chalmers' time to object to those fee requests had passed. When Chalmers appealed, we held that his time to object had not passed. *See Chalmers v. E. Valley Fiduciary Servs., Inc.*, 1 CA-CV 21-0163, 2021 WL 5895612, at *2, ¶ 11 (Ariz. App. Dec. 14, 2021) (mem. decision). We remanded for the court to determine whether the Professionals' failure to file Section 14-5109(A) notices rendered the court's decision to approve their initial fee requests "manifestly erroneous or unjust." *Id.* at *2–3, ¶¶ 11–12, 15 ("The policy against horizontal appeals will not be applied 'when an error in the first decision renders it manifestly erroneous or unjust.'").

¶12 After remand, the superior court held "[t]he attorneys in this matter did not comply with A.R.S. § 14-5109(A)." The court ruled that the Professionals therefore waived their right to seek compensation. The court found that although Section 14-5109(A) contains no language identifying the consequences for failure to file a written notice, the following provision, Section 14-5110(A), contains a forfeiture clause, and these two statutes should be read *in pari materia*. When read together, the court concluded that "parties must follow both statutes, and that filing of a Notice of Compensation is a prerequisite to the filing of a claim for compensation." Based on the Professionals' failure to file Section 14-5109(A) notices, the court found the fees approved in the initial fee orders were manifestly unjust and ordered the Professionals to return those fees to Chalmers within 60 days. The Professionals, and Michael Bogle and Andrew C. Stone acting as licensed fiduciaries for EVFS, timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A).

## DISCUSSION

¶13 We review *de novo* issues of statutory interpretation. *Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 211, ¶ 17 (App. 2018). "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so neither narrowly nor liberally, but rather according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *S. Ariz. Home Builders Ass'n v. Town of Marana*, ___ Ariz. ___, ___, ¶ 31, 522 P.3d 671, 676 (2023). Our objective is to "effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018).

¶14 We previously held that the initial fee orders contained insufficient finality language under Arizona Rule of Civil Procedure 54(b) or (c). *Chalmers*, 1 CA-CV 21-0163, at *2, ¶ 11. Because these orders were never certified as final, they are subject to challenge. And because the superior court decided Chalmers' challenge to the applications uniformly on the lack of notice issue, it did not take up whether the requests were reasonable under Section 14-5109(C). Thus, the only issue presented here is the interpretation of the notice requirement:

> When a guardian, a conservator, an attorney or a guardian ad litem *who intends to seek compensation* from the estate of a ward or protected person *first appears in the proceeding*, that person *must give written notice* of the basis of the compensation by filing a statement with the court and providing a copy of the

4

statement to all persons entitled to notice pursuant to §§ 14-5309 and 14-5405. The statement must provide a general explanation of the compensation arrangement and how the compensation will be computed.

A.R.S. § 14-5109(A) (emphasis added). The statute's plain text requires a professional to provide notice at the time of a first appearance, before seeking compensation. The language is unequivocally mandatory.

¶15        The Professionals ask us to excuse their failure to provide this notice for two reasons. First, they assert that because the statute does not contain language setting forth a consequence for failure to comply, there must be no consequence. Second, they contend that the fee applications—submitted as many as eight months after a first appearance and approaching one-third of a million dollars in fees accrued—can satisfy the notice requirement.

¶16        While Section 14-5109 contains no "purpose" statement, the Professionals argue the legislature's purpose is "to simply advise those responsible for managing the protected person's estate of the professional's rate of compensation." But the legislature adopted Senate Bill 1499 in response to widespread reports of financial abuse by court-appointed fiduciaries and attorneys over wards and protected persons. The Arizona Supreme Court Committee on Improving Judicial Oversight and Processing of Probate Court Matters convened in the wake of such reports and recommended the statutory changes contained in Senate Bill 1499. In its June 2011 final report to the Arizona Judicial Council, the committee explained that Section 14-5109(A) serves "to promote transparency and disclosure of fees paid from the estate of a ward or protected person." Ariz. Sup. Ct. Comm. on Improving Jud. Oversight and Processing of Prob. Ct. Matters, *Final Report to the Arizona Judicial Council* 102 (2011).

¶17        The procedural rules our supreme court subsequently adopted emphasize the transparency requirement for such compensation requests. Specifically, the version of Rule 33 in effect in 2017 mirrored the requirements of Section 14-5109: "A guardian, conservator, attorney or guardian ad litem who intends to be compensated by the estate of a ward or protected person shall give written notice of the basis of any compensation as required by Arizona Revised Statutes Section 14-5109." Ariz. R. Prob. P. 33(A) (2017) (amended 2020). And Rules 30.1, 30.2, and 30.3 required an appointed conservator to submit and abide by a budget and disclose the conservatorship's financial sustainability. *See* Ariz. R. Prob. P. 30.1–30.3 (2017) (abrogated 2020).

¶18 Because Section 14-5109 is unambiguous, we need not employ the *in pari materia* doctrine to discern its meaning. *See SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480, ¶ 8 (2018) (We read the statute's plain language "in context with other statutes relating to the same subject or having the same general purpose, and when that language is unambiguous, we apply it without resorting to secondary statutory interpretation principles."). But even if we applied the doctrine to construe the two statutes together, we would not use the doctrine to read the mandatory language out of Section 14-5109. *Collins v. Stockwell*, 137 Ariz. 416, 419 (1983) ("Statutes *in pari materia* must be read together and all parts of the law on the same subject must be given effect, if possible.").

¶19 Although the superior court erred in applying the *in pari materia* doctrine here, its conclusion is consistent with our determination: by its plain language, notice upon first appearance is a prerequisite to claiming fees under Section 14-5110(A). An "inten[t]" to "seek compensation" is anticipatory; it applies before professionals begin incurring fees and rendering services. And the notice requirement is mandatory, leaving no textual basis for us to conclude the legislature viewed it as optional or merely duplicative. If the statutory text presents "only one reasonable interpretation, we apply it without further analysis." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017) (citation omitted).

¶20 The structure of Section 14-5109 supports our conclusion that the notice provision is mandatory. The statute first tells an appointed individual he must provide advance notice of certain things before submitting a fee application. A.R.S. § 14-5109(A). Next, it makes clear that additional notice is required for any change in the basis for compensation. A.R.S. § 14-5109(B) (requiring thirty days' advance notice). Finally, the statute clarifies that the appointed individual cannot qualify for payment unless the court makes findings that the proposed work is reasonable, necessary, and appropriate for the estate. A.R.S. § 14-5109(C). In sum, each part of the statute underscores the mandatory prerequisite nature of the notice requirement.

¶21 All parties acknowledge, and we agree, that Section 14-5109(A) specifies no consequence or remedy for failure to file notice. Contrary to the dissent's perspective, we do not take this omission to render the provision a mere suggestion. The statute explicitly and unambiguously requires notice upon first appearance. Our duty to read statutory language in context should not lead us to nullify unambiguous language our legislature chose to adopt. And reading the statute as the dissent does suggests the potential for absurd outcomes: a guardian who provided

notice under subsection (A) of fees at $75 per hour must provide thirty days' advance notice to change that rate to $100 per hour. But a guardian who skipped the notice under subsection (A) need not provide any notice of a fee change according to the dissent's view—that guardian need only submit the proper Rule 33 application after incurring fees at the increased rate.

**¶22**        No one disputes that the Professionals failed to provide a "general explanation of the compensation arrangement and how the compensation will be computed" when they first appeared in the proceeding. A.R.S. § 14-5109(A). They therefore failed to meet the prerequisite that would allow them to collect the first round of fees. We affirm the court's order requiring the Professionals to return the fees requested in their initial Rule 33 applications—those subject to the initial fee orders discussed at ¶ 6, *supra*.

**¶23**        The failure to file the prerequisite notice is prejudicial as to any initial Rule 33 applications, for which interested persons lack a "general explanation of the compensation arrangement and how the compensation will be computed." A.R.S. § 14-5109(A). But nothing in the statute prevents a factual finding that an initial Rule 33 application suffices to provide the content of the required notice necessary for subsequent fee requests. The court may evaluate whether an initial application provides the information required by Section 14-5109(A), thereby providing the required notice in substance, if not in the form required by the statute. And the prejudice inherent in the lack of notice would dissipate as to the later fee requests for which interested persons now have the compensation details before incurring additional fees. In this case, the court may conclude that the failure to file at first appearance is not prejudicial to applications submitted after the requests approved in the initial fee orders.

**¶24**        Accordingly, we vacate the court's order as to the Professionals' subsequent applications (described in ¶ 7, *supra*) and remand for the court to consider in the first instance whether the contents of the initial Rule 33 applications satisfy the statute's notice requirement. If so, the court should evaluate the subsequent applications for timeliness. *See* A.R.S. § 14-5110(A) (A claim for compensation "is waived if not submitted to the fiduciary in writing within four months after either rendering the service, incurring the cost, initial appointment of the fiduciary or the effective date of this section, whichever is later.").

**CONCLUSION**

¶25        We affirm the superior court's ruling requiring the Professionals to return the fees requested in their Rule 33 applications, subject to the initial fee orders. We vacate as to the later applications and remand for proceedings consistent with this opinion.

**W I L L I A M S**, J., dissenting

¶26        I respectfully dissent. I agree that A.R.S. § 14-5109's plain language establishes a written notice requirement for professionals who anticipate seeking future compensation from a protected person or ward's estate, *supra* ¶ 14. But I disagree that a failure to provide such written notice necessarily forecloses a professional from subsequently seeking reasonable compensation for services rendered.

¶27        Section 14-5109(A) mandates that a professional who intends to seek compensation in this context provide a "general explanation of the compensation arrangement and how the compensation will be computed." And a professional who fails to file a § 14-5109 notice runs a significant risk that his or her fee rate will be rejected as unreasonable or that the overall amount sought may be rejected. But the statute does not preclude (as a consequence for non-compliance) an award of fees that is ultimately deemed to be reasonable, and I would not read such a consequence into the statute. In my view, the failure to provide notice under § 14-5109 may be a basis for challenging the *amount* of fees charged by a professional, but it is not a basis from which to preclude altogether a fee request for services rendered here.

¶28        Notwithstanding the failure to file the § 14-5109 notice, the initial judicial officer who analyzed the first fee request determined those fees to be reasonable for services rendered. Accordingly, I would reject the superior court's *post hoc* rejection of those previously awarded fees based on the failure to file a § 14-5109 notice.

¶29        The absence of language in § 14-5109 creating an absolute bar to payment of requested fees if a preliminary notice is not provided is particularly significant when the statute is read in conjunction with A.R.S. § 14-5110. That provision establishes a time limit for seeking fees—"within four months," as relevant here, of "rendering services." But unlike § 14-

5109, § 14-5110 expressly establishes a consequence for a professional's noncompliance—the claim for compensation "is waived."

¶30 When construing these related statutes together, the *absence* of waiver language in § 14-1509 reflects the *absence* of legislative intent to wholly bar professionals who fail to timely provide § 14-1509 notice when first appearing from subsequently seeking compensation for services rendered under § 14-1510. In other words, had the legislature intended to impose such an overarching, automatic procedural bar, it would have done so explicitly—as it plainly did in § 14-1510—not by implication. *See SolarCity Corp.*, 243 Ariz. at 480, ¶ 8 ("The best indicator of [the legislature's] intent is the statute's plain language, which we read in context with other statutes relating to the same subject or having the same general purpose[.]"); *cf. Luchanski v. Congrove*, 193 Ariz. 176, 179, ¶ 14 (App. 1998) ("When the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded.").

¶31 In the absence of such express waiver language, I conclude that a professional's submission of a § 14-5110 compliant claim for compensation substantively—though not temporally—may satisfy § 14-5109(A)'s notice requirement. The majority agrees with that conclusion, but only on a prospective basis for subsequent (not initial) claim requests, *supra* ¶ 23. The majority does not explain, however, why employing that approach on a prospective basis does not negate altogether the importance the majority places on the "unequivocally mandatory" statutory language, discussed *supra* ¶14, of the professional's compensation notice when "first appear[ing]." A.R.S. § 14-5109. In my view, it does.

¶32 While an interested party could challenge a § 14-5110 compliant claim as defective under § 14-5109, and the superior court could deny or reduce a fee award on that basis, when no interested party timely objects and the court accepts the claim for compensation and engages in a reasonableness determination, ultimately finding the requested fees appropriate, from my perspective, the professional should be able to rely on that reasonableness determination in continuing to render services.

¶33 Here, because the superior court concluded the Professionals' waived their previously approved claims for compensation by failing to provide a § 14-5109 notice when first appearing in the proceeding, I would reverse the court's rulings on the initial fee orders. And because the Professionals reasonably relied on the court's reasonableness determination concerning their initial compensation claims, finding those

fees appropriate, I would likewise vacate the superior court's ruling denying the Professionals' subsequent claims for compensation as defective for lack of § 14-5109 notice.

